[404] GEORGE W. PETTY vs. JOHN CLEVELAND — Writ of Error from Washington County.

Where exceptions are filed, but not relied on below, and the parties appear to have proceeded to a trial of the issues of fact, the record being silent as to any decision had or sought on the issues of law, they will be considered as having been waived by the party filing them, and will not be the subject of revision.

The exceptions to this rule arise in cases where the foundation of the action itself appears to have failed; or where the objection, first taken in the appellate court, goes to the merits or foundation of the action, and could not have been obviated if made in the court below.

The sixth section of the act of 1836, "establishing the jurisdiction of the district courts," was intended to secure to the surety a personal privilege, that of not being sued before his principal, but not to make this a condition upon which the *obligation* of the surety should depend.

To establish his exemption from suit, under the statute above cited, the surety must plead and prove that his principal was within the jurisdiction of the court, in the same manner as every other substantive matter of defense is required to be averred and proven. [Explained, 6 Tex. 227; 30 Tex. 22; overruled, 4 Tex. 422.]

To enable a defendant to avail himself of the defense that his liability is barred by the law of limitation, it must be made by plea or exception and relied on as a defense in the court below.

The plaintiff in error was surety for one Wood, upon a bond in the penalty of two thousand dollars, conditioned that the latter would make to the defendant in error a title to a certain tract of land in twelve months after the date thereof. The cause of action accrued thereon in December, 1840, and this suit was brought in April, 1845, against the surety alone.

Filed with the answer were exceptions to the petition, in that it disclosed another party, Wood, who ought to have been joined, and contained no averment that Wood, the principal, had been first sued. The record discloses a verdict and judgment for the plaintiff, but no statement of facts or [**405**] bill of exceptions accompanies it. It nowhere appears that judicial cognizance was taken of the exceptions, or that they were ever brought to the attention of the court below.

*Hale*, for plaintiff in error.

*Gillespie*, for defendant in error.

Mr. Justice WHEELER, after stating the facts, delivered the opinion of the court Mr. Justice LIPSCOMB not sitting, having been of counsel in the court below.

To reverse the judgment it is now contended —

1st. That the principal not being sued, and there being no averment that he was not within the jurisdiction of the court, the petition shows no right of action against the surety; and 2d. That more than four years having intervened between the accruing of the action and the bringing of the suit, all right of action against the surety was lost to the plaintiff by his own *laches*.

We might dispose shortly of these alleged errors by a reference to former decisions. We have repeatedly decided that where exceptions were filed, but not relied on below, and the parties appear to have proceeded to a trial of the issues of fact, the record being silent as to any decision had or sought on the issues of law, they will be considered as waived by the party filing them, and will not be the subject of revision; that being strictly an appellate court, it is our province to decide only those questions, in general, which were passed upon or presented to the court below; for that to decide matters not litigated in that court would be, in so far, to assume the exercise of original jurisdiction, and to adjudicate, not the case there decided, but a new and different case. 1 Tex. 527. The exceptions to the rule are, where the foundation of the action itself appears to have failed; or where the objection first taken in this court goes to the merits, or to the foundation of the

action, and could not have been obviated, had it been made in the court below; and [406] not to those matters merely, which the party may be deemed, by his silence, to have waived.

Neither of the grounds of defense now urged goes to the merits or foundation of the action, and neither appears to have been relied on below. The latter does not appear to have been intimated in that court.

1. The act of 1836, sec. 6, 1 Stat. 201, upon which the first objection is founded, seems to have been intended to secure to the surety a personal privilege, that of not being sued before his principal, but not to make this a condition upon which the liability of the surety should depend. It seems to have been intended merely as a regulation of the remedy, and not of the right; and, in this view, as properly a matter of defense, to be used or not, at the option of the surety. To constitute the exemption of the surety, his principal must be within the jurisdiction of the court; and it is conceived that, to avail himself of this exemption, he must plead and prove it, in like manner as he is required to aver and prove every other substantive, affirmative matter of defense. It would seem more consonant to reason and principle, that the surety should be required to establish, *affirmatively*, the presence of his principal within the jurisdiction, than that the plaintiff should be required to show *negatively* that the principal is not within the jurisdiction of the court. The fact of the residence of the principal is presumed to be more peculiarly within the knowledge of his surety than of the plaintiff. The confidential relation subsisting between them naturally leads to this presumption. The rule of the civil law, as regards the remedy against the surety, seems founded upon it, and entirely to accord with the view we have taken. It declares that " if the principal debtor live in the place, the debt ought to be demanded of him before it is of his securities, . . . but if the securities happen to be in the place, and the principal debtor not, and recourse be first had against the securities, and they petition for delay in order that they may bring forward the principal debtor, it [407] ought to be granted to them, and if they do not produce him before the time, then they ought to answer to the

suit," etc. Partida V. tit. 12, law 9. Hence, it seems that the exemption of the surety was regarded merely as a personal privilege, which, to avail him, he must specially set up and assert as matter of defense. And it will be conceded that the adoption of the common law did not introduce a different rule; for, by that law, if a party be omitted who ought to be jointly sued, the objection can only be taken by plea in abatement. 5 T. 651; 4 T. 725; 1 B. & A. 224.

That the defense, arising from the statutory exemption from being first sued, to avail the surety, ought to have been made by plea or otherwise, and *relied on*, in the court below, we cannot doubt; and, this not having been done, it cannot now be entertained.

2d. The remaining objection must be met by the same answer. It was not made and relied on as a defense in the court below.

It seems conceded in argument that to enable the defendant to avail himself of the defense that his liability is barred by the law of limitation, he must plead it. But a distinction is sought to be drawn between the bar interposed by the statute and the *laches* of the plaintiff; and it is contended that "in his character of surety, the court below ought to have allowed the defendant the benefit of the act, and to have decided that the plaintiff, by his own *laches*, had abandoned and lost all right against him."

No such doctrine is recognized in the cases cited. In the civil law, to whose doctrines we referred, the surety, when sued, is allowed to oppose every defense inherent to the debt, and not merely personal to the principal, which the principal himself could have made. 12 M. 378; 10 La. 415. And as it is his privilege, so it would seem to be as well his duty, as that of the principal, specially to plead, or otherwise interpose the objection of prescription, where [408] he intends to rely upon it as his defense. The present is a question, not of *laches*, but of limitation. Burge on Suretyship, 260, 372, 378, 388, and cases cited.

In Louisiana it has been settled by a series of decisions, that a party who relies on prescription must plead it, and that the

want of a plea cannot be supplied, *ex officio,* by the court. 10 M. 184; 1 M. (N. S.) 312; 6 id. 471. In Dunbar v. Nichols, 10 M. 185, Martin, J., says: "The law has provided defendants with the plea of prescription, that they may use it as a shield to protect themselves from unjust claims, not to use it as a weapon to destroy just rights. . . . The court neither can nor ought to supply the want of it *ex officio.* When the plea is not made, the presumption is that the defendant thinks it would not avail him at all, and that he cannot righteously avail himself of it." And in Brown et al. v. Duplantier, 1 M. (N. S.) 317, the same court says: "Every period within which a party must or is directed to institute his action, is established for the benefit of the defendant, who is bound not to avail himself unrighteously of this legal advantage provided for him. It is his duty to abstain from the use of it while his just defense does not require it. When, therefore, a defendant answers the plaintiff's petition without urging that the suit was not brought within the time fixed by law, the court is bound to conclude that the defendant, yielding to the obligations of morality, declines a legal advantage which justice reproves."

This is the good sense and sound reason of the rule, both of the civil and the common law, which requires statutes of limitation or prescription to be specially pleaded, or at least insisted on by exception or otherwise as a ground of defense, by those who would avail themselves of the advantage afforded by them. It is founded in the common sense of justice and morality of mankind; and it would shock that sense of justice to assert that those statutes were designed to secure an undue advantage to the fraudulent debtor, who [**409**] had delayed his honest creditor until a given period had elapsed; or that a humane indulgence of the creditor is an *offense* which should be punished with a forfeiture of rights; or even that the *procrastination* of a duty is equivalent to its performance.

Our act of limitations, 5 Stat. 165, section 7, see also in the last clause of section 8 another exception, seems to make an exception to the rule, where suit is brought "against any executor or administrator, or other person having charge of the estate of a testator or of an intestate, for the recovery of a

debt due upon an open account;" and to contemplate that in that case the court shall, *ex officio*, interpose in behalf of those favored persons who are obliged to entrust their interests to the care of others. But the exception embraced in this section, instead of authorizing the supposition that our statute contemplated a different general rule from that which prevails elsewhere, respecting the necessity of specially interposing the defense afforded by the statute, would seem to demand an opposite conclusion, in accordance with the maxim that *the exception proves the rule.*

To have made the bar, interposed by the statute, a defense in the present instance, it ought certainly to have been made by plea or exception a defense in the court below. The objection, being now first taken in this court, comes too late; especially as the defendant appeared and pleaded other matters of defense in the court below, and remained silent as to this.

We are of opinion that there is no error in the judgment, and that it be affirmed.

---

[410] LEONARD W. GROCE vs. JOHN H. HERNDON — Appeal from Austin County.

An administrator to whom a note is made payable can sue upon it in his own name, or as administrator, and can transfer it by indorsement. Nor is this principle affected by the fact that the consideration of the note was derived from the estate of the deceased. [*Ante*, 277.]

This suit was brought by the appellee as the assignee of two notes given by the appellant to Sarah J. Sharp, administratrix of John Sharp, deceased. The notes are in the following words:

" $756 77-100. On or before the first day of January next I promise to pay to Sarah J. Sharp, administratrix of John Sharp, deceased, or order, the sum of seven hundred and fifty-six dollars and seventy-seven cents, for value received, with